UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

MARIA YVONNE ALVAREZ-DIAZ A/K/A　　　　　Case No. 10-71907-478
MARIA ALVAREZ A/K/A MARIA DIAZ,　　　　　　Chapter 7

　　　　　　　　　Debtor.
-----------------------------------------------------------X
NEIL H. ACKERMAN, as Trustee of the
Bankruptcy Estate of MARIA YVONNE
ALVAREZ-DIAZ A/K/A MARIA ALVAREZ　　　　Adv. Pro. 10-08691-478
A/K/A MARIA DIAZ,

　　　　　　　　　Plaintiff,

　　　　-against-

MARIA YVONNE ALVAREZ-DIAZ A/K/A
MARIA ALVAREZ A/K/A MARIA DIAZ,
AND NEILIDA TORRO A/K/A NELIDA
TORO A/K/A NELINDA TORO,

　　　　　　　　　Defendants.
-----------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER

*Appearances*:

　　　　　　　Phillips, Weiner, Artura, Cox & McDonaugh, Esqs.
　　　　　　　　　*Attorneys for Debtor/Defendant*
　　　　　　　　　　By: Richard F Artura
　　　　　　　　　165 South Wellwood Avenue
　　　　　　　　　　Lindenhurst, NY 11757

　　　　　　　　　Barton Barton & Plotkin LLP
　　　　　　　　　*Attorneys for Trustee/Plaintiff*
　　　　　　　　　By: Neil H. Ackerman, Esq.
　　　　　　　　420 Lexington Ave., 18th Fl.
　　　　　　　　New York, New York 10170


　　　　Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court are the Defendants' motion for summary judgment[1] and the Trustee's cross-motion for summary judgment (collectively, the "Summary Judgment Motions"). The instant adversary proceeding was commenced by the Trustee on October 28, 2010 against the Debtor, Maria Diaz, and her mother, Neilida Torro (collectively, the "Defendants"). The Trustee asserts thirteen causes of actions against the Defendants arising under 11 U.S.C. §§ 105, 323, 363(h) and (j), 541, 542, 544, 547, 548, 549, 550, 551, and 727; New York Debtor and Creditor Law Sections 270-279 inclusive; the legal doctrines of, and applicable law concerning, unjust enrichment, equitable lien and constructive trust; and Federal Rules of Bankruptcy Procedure 6009 and 7001. A hearing on the Summary Judgment Motions was held on April 28, 2011. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(A), (E), (F), (H), (J), (N) and (O). For the reasons set forth below, the Defendants' motion for summary judgment is granted, the Trustee's cross-motion for summary judgment is denied, and the adversary proceeding is hereby dismissed.

## BACKGROUND:

The following facts are undisputed, unless noted otherwise.

1. *The Patchogue Property*

The Debtor commenced her chapter 7 bankruptcy case on March 21, 2010. Prior to her filing the Debtor was married to Angel Diaz, Jr. ("Angel"), with whom she had three children. In 1996 the Debtor and Angel purchased the Patchogue Property located at 24 Camille Lane, Patchogue, New York 11772 (the "Patchogue Property") for $120,000.00 as tenants by the entirety. At some point thereafter, the Debtor and Angel transferred a 5% ownership interest in the Patchogue Property to the Debtor's mother, Neilida Torro ("Mrs. Torro"). Pursuant to a deed

---

[1] In her "Affidavit in Support of Defendant's Motion for Summary Judgment" Defendant Neilida Torro states that she joins the Debtor/Defendant's Motion for Summary Judgment, and requests that the adversary complaint be dismissed. (ECF Docket No. 15).

2

dated July 23, 2003 the Debtor and her mother transferred their remaining interest in the Patchogue Property to Angel, making him the 100% owner of the Patchogue Property. The Court's record does not reveal why this was done.

Eventually the relationship between the Debtor and her husband deteriorated, and in 2004 the Debtor commenced a divorce action against Angel in the Supreme Court of the State of New York, County of Suffolk. The Debtor and Angel were able to resolve their divorce action by entering into a Stipulation of Settlement on January 4, 2006. Thereafter, the Suffolk Supreme Court entered a Judgment of Divorce on April 28, 2006. At the time of her divorce, the Debtor's youngest child was approximately 18 years old. The Divorce Stipulation provided that Debtor's ex-husband Mr. Diaz, and not the Debtor, would have custody of the child.

Under the terms of the Stipulation of Settlement the Debtor was required to pay $15,000.00 to Angel, which represented Mr. Diaz's equitable distribution of the marital assets. In exchange the Debtor would assume the mortgage on the Patchogue Property of which she would be the sole owner. The Stipulation of Settlement stated that if the Debtor was unable to assume the mortgage, then her mother would be allowed to purchase the property. Specifically, it states:

> In order to enable the wife to refinance the marital residence so that the present first mortgage is satisfied, the husband receives his distributive award of $15,000.00 and the wife pays off said Home Depot bill, the wife agrees to allow her mother to purchase said residence for the wife's sole benefit from the husband pursuant to a separate Contract of Sale, if required…. The wife will accept her equitable distribution of the marital residence by having her mother purchase said house as noted herein and for the Deed to said house being placed in the wife's mother's name.

(ECF Docket. No. 18).

However, while the Debtor did seek to obtain a loan or assume the mortgage, her poor credit prevented her from doing so. Thus, in accordance with the Stipulation of Settlement, the Debtor's mother, Mrs. Torro purchased the Patchogue Property. Mrs. Torro and Angel entered

into a Contract of Sale of the Patchogue Property dated in February 2006 for the purchase price of $225,000, with a down payment of $60,000. Thereafter, title to the property was transferred to Mrs. Torro.

Mrs. Torro took out a Note and Mortgage with GMC Mortgage Corporation ("GMC") in the sum of $175,000.00 in order to purchase the Patchogue Property and satisfy the existing mortgage on the property. She is the sole signatory on the GMC Note. The Defendants' exhibits contain a copy of a mortgage statement from GMC to Mrs. Torro, as well as copies of checks written to GMC from Mrs. Torro's bank account for her monthly mortgage amounts. In addition, there are additional exhibits that show Mrs. Torro's ownership of the Patchogue Property, which include (1) a copy of the 2009 Suffolk County Tax Bill to Mrs. Torro with respect to the property in the sum of $7,493.23, (2) a Homeowner's Insurance Binder for the property; and (3) a LIPA bill for the property in Mrs. Torro's name. (ECF Docket No. 15).

After Mrs. Torro purchased the property the Debtor began paying her rent so that she could remain there. This is evidenced by several rental receipts from Mrs. Torro to the Debtor for the period of December 2009 up to and including January 2011, which show the monthly payments made by the Debtor. In addition to the Patchogue Property, Mrs. Torro's 2009 Tax Return shows that she derives rental income from three homes that she owns.[2] Specifically, according to Mrs. Torro's 2009 Tax Return Mrs. Torro derived $22,500.00 in rent from the Patchogue Property. While the Trustee does not dispute that the Debtor paid her mother every month, the Trustee disputes the characterization of the payments. According to the Trustee, the "rent" the Debtor paid her mother is the amount necessary to cover the mortgage payments and

---

[2] The three properties are: (1) 24 Camille Lane, E. Patchogue, New York; (2) 3440 Giles Place, Bronx, New York; and (3) 14826 Day Lily Court, Orlando, Florida.

4

expenses associated with the Patchogue Property. As such the Trustee argues that it is the Debtor that is the true owner of the Patchogue Property.

2. *House of Aromas Bath & Body*

The other focus of the Trustee's Complaint is on a business called "House of Aromas Bath & Body", which the Debtor had attained a tax identification number for on August 12, 2003, nearly seven years prior to the petition date. The business was not listed on the Debtor's schedules, and was discovered by the Trustee through a Westlaw Search. However, the Debtor states that the concept was never incorporated, did no business, made no income, had no assets or liabilities, and never filed any tax returns. The Trustee does not dispute the Debtor's assertions.

## **DISCUSSION:**

It is appropriate for a Court to grant a motion for summary judgment if there are no genuine triable issues of material fact. *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Any ambiguities or reasonable inferences must be resolved in favor of the nonmoving party. *See Bell v. Rochester Gas & Elec. Corp.*, 329 Fed. Appx. 304, 305 (2d Cir. N.Y. 2009); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11. When dealing with motions for summary judgment that seek the denial of a debtor's discharge, like in the instant case, the Court must keep in mind the fact that the goal of the Code is to provide a fresh start to the "'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007). The Trustee seeks summary judgment in his favor on all thirteen of his causes of action, while the Defendants seek a decision denying all of the Trustee's causes of action and dismissing the Trustee's Complaint.

The Trustee's First through Seventh and Ninth Causes of Action focus on the Patchogue Property, and they allege that the Debtor's estate should be judicially determined to be the owner of the Patchogue Property. Such a finding would allow the Trustee to sell the property and recover any payments made by the Debtor on behalf of the property or otherwise, to Mrs. Torro as fraudulent conveyances under the Bankruptcy Code, New York Debtor and Creditor Law and/or New York common law. The Trustee's Eighth Cause of Action requests that the Court order the Defendants to turnover documentation relating to the Patchogue Property and the House of Aromas Bath & Body. Several of the causes of action also request that this Court award the Trustee attorney's fees, punitive damages, interest, and costs. The Trustee's Tenth through Thirteenth Causes of Action seek to deny the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4)(A), (a)(4)(D), and (a)(5).

A. <u>The Patchogue Property And Payments Related Thereto</u>

It is undisputed that Mrs. Torro is the owner of the Patchogue Property. However, it is the Trustee's contention that despite Mrs. Torro's clear ownership of the property, this Court should rule that it is the Debtor that is in fact the equitable owner. In order to recover any payments made by the Debtor to her mother related to rent or expenses of the property under the theory that the payments were either an actual intended fraudulent conveyance and/or constructive intended fraudulent conveyance, the Trustee would have to provide evidence to support these contentions, but none is available.

The basis for the Trustee's argument is twofold: (1) that the Debtor's payments to her mother on behalf of the Patchogue Property are high enough to cover the property's mortgage costs and expenses thus making the Debtor the true owner of the property; and (2) that the Stipulation of Settlement governing the Debtor's divorce stated that the Debtor's mother, Mrs.

Torro, could purchase the residence for the Debtor's "sole benefit" and that this was part of a scheme to shield the property from the Debtor's creditors. The Court will address both of these arguments in turn.

As this Court has previously noted in *Ackerman v. Alesius (In re Alesius)*, 2010 Bankr. LEXIS 3924 (Bankr. E.D.N.Y. Nov. 1, 2010), the question that rises to the forefront in situations such as this is whether or not the Debtor received fair consideration for the money transfers that were made. *In re Alesius* the debtor/husband contributed to the monthly mortgage payments and household expenses that were associated with the house he lived in with his wife, who was the actual owner of the property. The trustee sought to recover the property and the payments as fraudulent conveyances. This Court found that there was fair consideration given for the payments as the expenses and mortgage payments paid by the debtor were reasonable, and that in exchange for making those payments, the debtor received a place to live. *See Ackerman v. Alesius (In re Alesius)*, 2010 Bankr. LEXIS 3924, *13 (Bankr. E.D.N.Y. Nov. 1, 2010); *see also United States v. Goforth*, 465 F.3d 730, 736 (6th Cir. 2006) (noting "that the greater weight of authority holds … that a debtor does indeed receive 'reasonably equivalent value' when he/she makes payments to his/her spouse (or co-habitant) that are used for household expenses"); *Gonzalez v. Wells Fargo Bank, N.A. (In re Gonzalez),* 342 B.R. 165, 172-73 (Bankr. S.D.N.Y. 2006); *In re Meinen,* 232 B.R. 827, 842 (Bankr. W.D.Pa. 1999) (declining to find that reasonable household expenses were fraudulent transfers where the debtor-husband and spouse pooled their funds to make the payments).

Here the Debtor was paying her mother monthly rental payments in the sum of approximately $1,800.00 per month for the use of a house where she and her children could live. The Trustee does not argue that this amount was too high or unreasonably expensive for the

property utilized; rather the Trustee argues that this amount was enough to cover the mortgage costs on the property and the expenses, and that by making these payments the Debtor was depriving her creditors of assets and funds. In addition, the Trustee argues that the payments indicated that the Debtor was the "true" owner of the property. However, similarly to *In re Alesius*, here the Debtor was making monthly payments to her mother to cover her rent, and in exchange the Debtor and her children were afforded a place to live. The Debtor would have to pay rent for any property used by her and her family for living quarters. That the Debtor entered into this type of arrangement with her mother does not in and of itself render it fraudulent, and the Trustee has not provided anything in further support of his allegations and suppositions.

As for the Trustee's argument that the Stipulation of Settlement stated that Mrs. Torro could purchase the property for the Debtor's "sole benefit" and that this was part of a scheme to shield the property from the Debtor's creditors, the Court is not persuaded. The Trustee is interpreting the phrase "sole benefit" as equivalent to a financial benefit for the Debtor. However, as evidenced by the fact that the Debtor is paying rent to her mother, it seems more likely that the Stipulation of Settlement was drafted to provide that the Debtor's mother would purchase the Patchogue Property so that the Debtor would be able to remain in her home at a time when her relationship with her husband was crumbling. Mrs. Torro then charged her daughter rent which would allow Mrs. Torro to make her monthly mortgage payments. Furthermore, by the Debtor's mother keeping the home in the family, so to speak, it allowed a familiar place for the Debtor and her three children to have a home. This was the intended benefit of the matrimonial stipulation for the Debtor's "sole benefit". The Debtor did not pay, or obligate herself, to obtain a mortgage, and made no additional payments to her mother other than a reasonable rent.

It is clear from the evidence presented to the Court that Mrs. Torro is the owner of the property, that she is also the owner of several other properties, and that she collects rent from all of these properties. Specifically, Mrs. Torro listed the Patchogue Property on her 2009 Tax Return and reported the rental income that she received. The Court has also been provided with documentation from Suffolk County, LIPA, and Mrs. Torro's insurance carrier, all of which attest to the fact that she is the owner of the Patchogue Property. There is nothing stopping her from evicting her daughter tomorrow or the next day in the event of a default by the Debtor in their rental agreement, and there is nothing that would provide the Debtor with an argument that the property is rightfully hers. The Trustee's argument that there was a "scheme" is further weakened by the fact that the mortgage on the property is in Mrs. Torro's name and she alone bears the financial burdens and costs if there is a default.

Thus, the Court finds that the Patchogue Property is owned by Mrs. Torro, neither the Debtor nor the Debtor's estate has an economic interest in the property and the Debtor's payments to her mother were reasonable and not improper. Thus, the Trustee's First through Seventh and Ninth Causes of Action, which seek a determination that the property and/or any payments made to the Debtor's mother should be turned over to the Debtor's estate, are denied.

B. The Trustee's Request For Denial of the Debtor's Discharge

The Trustee's Tenth, Eleventh and Thirteenth Causes of Action seek a denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4)(A), and (a)(5), respectively. The Trustee's bases for requesting a denial of the Debtor's discharge are twofold: (1) that the Debtor failed to disclose her beneficial and/or equitable ownership interest in the Patchogue Property; and (2) that the Debtor failed to disclose her beneficial and/or equitable ownership interest in the business named "House of Aromas Bath & Body".

9

This Court has already addressed the ownership of the Patchogue Property. Since the Debtor had no interest in the property she had no obligation to list it on her schedules and therefore she did not conceal this information from the Trustee and her creditors. Thus, the Trustee's efforts to deny the Debtor's discharge on the grounds that she failed to disclose her alleged beneficial and/or equitable ownership interest in the Patchogue Property is denied.

The Trustee's argument that the Debtor's discharge should be denied due to her failure to list on her schedules her interest in the business known as "House of Aromas Bath & Body" is unpersuasive. The only evidence provided as to the existence of the business is that the Debtor acquired a tax identification number for the business on August 12, 2003, which was nearly seven years before the Debtor filed her chapter 7 bankruptcy petition. There is no evidence that the business ever operated, ever earned income, ever had assets or liabilities or ever filed tax returns. *See Desiderio v. Parikh (In re Parikh)*, 2011 Bankr. LEXIS 1964, *66 n.21 (Bankr. E.D.N.Y. May 24, 2011) (noting that the debtor's failure to list a business was arguably excused since the business ceased operating more than six years prior to the bankruptcy filing). In light of the lack of evidence as to the substantive existence of the business and/or its operation, the Court will not deny the Debtor her discharge.

Thus, the Trustee's Tenth, Eleventh and Thirteenth Causes of Action are denied.

C. <u>The Trustee's Complaint With Respect To Document Production</u>

The Trustee's Complaint asserts two causes of action against the Debtor relating to the turnover of documents: (1) the Trustee's Eighth Cause of Action, which seeks the turnover of documents relating to the Patchogue Property and House of Aromas Bath & Body; and (2) the Trustee's Twelfth Cause of Action, which seeks a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(D) due to the Debtor's alleged withholding of documents relating to the

Patchogue Property, the House of Aromas Bath & Body, and the Debtor's financial affairs. As both the Trustee and the Defendant's counsel have agreed that there are no issues of fact that would prevent this Court from deciding the motions for summary judgment, and this Court concludes that it can rule based upon the documents provided, it logically follows that all of the necessary documentation was provided to the Trustee. Therefore, the Trustee's Eighth Cause of Action and the Trustee's Twelfth Cause of Action are denied.

### CONCLUSION:

Based upon the above findings and conclusions of law, the Defendants' motion for summary judgment is granted, the Plaintiff/Trustee's cross-motion for summary judgment is denied, and the above-captioned adversary proceeding is hereby dismissed. As the Trustee's motion for summary judgment is denied, his request in the Complaint for fees and costs is also denied.

So ordered.

**Dated: Central Islip, New York**
**June 20, 2011**

*Dorothy Eisenberg*
**Dorothy Eisenberg**
**United States Bankruptcy Judge**